## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLORADO

Civil Action No.  1:24-cv-03252-STV

DYLAN YAHIR CASTILLO DELGADO; *et al*,

      Plaintiffs,

v.

LOREN K. MILLER; *et al*,

      Defendants.

_____

## ORDER
_____

Chief Magistrate Judge Scott T.  Varholak

     This matter is before the Court on Defendants' Motion to Dismiss (the "Motion"). [#12]  The parties have consented to proceed before the undersigned United States Magistrate Judge for all proceedings, including entry of a final judgment.  [##24, 26]  This Court has carefully considered the Motion and related briefing, the entire case file and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Motion.  For the following reasons, the Motion is **GRANTED**.

## I.    BACKGROUND[1]

     Plaintiffs to this case are applicants for U-visas.  [#1 at ¶ 1]  This is a temporary immigration status available for victims of qualifying crimes, and their family members, who assist law enforcement authorities.  [*Id.*  at ¶¶ 1-2]  United States Citizenship and

---

[1] The facts are drawn from the allegations in Plaintiff's Complaint (the "Complaint") [#1], which must be taken as true when considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  *Wilson v. Montano*, 715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

Immigration Services ("USCIS") is only statutorily authorized to issue 10,000 U-visas each year, however, and the number of yearly applicants exceeds the 10,000 available U-visas. [*Id.* at ¶ 2]; 8 U.S.C. § 1184(p)(2)(A). Thus, when USCIS determines that a petition meets the U-visa requirements but, solely due the statutory cap, a petitioner is not granted a U-visa, such petitioner is placed on a waiting list. [#1 at ¶ 2]; 8 C.F.R. § 214.14(d)(2). At the time this case was filed, the processing time for adjudication of wait list placement was approximately 54 months. [#1 at ¶ 2] Once a petitioner is placed on the wait list, USCIS will grant deferred action or parole to a petitioner and their qualifying family members while the petitioners are on the wait list. 8 C.F.R. § 214.14(d)(2). USCIS may also grant employment authorization documents ("EAD") for such petitioners and their qualifying family. *Id.* A deferred action is not an immigration status, but rather an action that lowers the priority of the petitioner's removal from the country. *See generally Casa de Maryland v. U.S. Dep't of Homeland Sec.*, 924 F.3d 684, 708 & n.1 (4th Cir. 2019) (Richardson, J., concurring in part and dissenting in part).

In 2021, due to an increasing volume of U-visa petitions, USCIS issued a policy which permitted USCIS to grant EADs to some applicants without making a full wait list eligibility determination. [#1 at ¶ 3] This expedited decision is referred to as a bona fide determination ("BFD"). [*Id.*] If USCIS determines that a petition is bona fide, USCIS may grant the petitioner deferred action from removal through the grant of the BFD EAD. [#12 at 4]. Once a petitioner is issued a BFD EAD, USCIS generally will not conduct waiting list adjudications and will instead conduct a "final adjudication when space is available under the statutory cap." U.S. CITIZENSHIP AND IMMIGR. SERVS., POLICY MANUAL Vol. 3 Part C Ch. 5, *available at* https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-

5 (last visited Sept. 1, 2025).  After USCIS decides a petitioner will not receive a BFD EAD, USCIS proceeds to a full adjudication for waiting list placement.  *Id.*  USCIS prioritizes all petitions for final adjudication in the order they were received.  *Id.*

This action originally consisted of 45 Plaintiffs who applied for U-visas and had not received a determination as to eligibility for a BFD, EAD, or deferred action by the USCIS Nebraska Service Center.  [#1 at ¶ 5]  At the time the Complaint was filed, Plaintiffs had been waiting between two and 59 months for their applications to be processed.  [*Id.*]  In January 2025, 18 Plaintiffs were voluntarily dismissed from this action.  [#11]  Between February and May of 2025, 18 more Plaintiffs were voluntarily dismissed.[2]  [##17, 21, 27]  These 36 Plaintiffs were issued BFDs and related EADs during the pendency of this matter, thus mooting their claims.  [##11, 17, 21, 27]  The remaining Plaintiffs have now waited approximately 11-29 months to have their U-visa applications processed.  [#1-2]

Based on these allegations, the remaining Plaintiffs seek a court order requiring Defendants to place Plaintiffs on the U-visa waitlist, grant them EADs, and grant them deferred action through the BFD process.  [#1 at 11]  In Count One, Plaintiffs allege that Defendants violated a mandatory duty to place Plaintiffs on the waiting list or to make BFDs as to their U-visa application in a reasonable period of time.  [*Id.* at ¶¶ 29-33]  Plaintiffs allege entitlement to relief under the Mandamus Act pursuant to 28 U.S.C. § 1361.  [*Id.* at ¶ 33]  In Count Two, Plaintiffs allege that Defendants had a non-discretionary obligation to determine Plaintiffs' eligibility for the waiting list or a BFD.  [*Id.* at ¶¶ 34-36]  They state that Defendants violated the Administrative Procedure Act's (APA) requirement

---

[2] Defendants contend that Dylan Yahir Castillo Delgado's claims are now moot and should be dismissed because USCIS issued a BFD notice for this Plaintiff.  [#12 at 12]  This Plaintiff was dismissed on February 7, 2025, and thus the argument is moot.  [#17]

that agency's act "within a reasonable time" by failing to make a determination of the Plaintiffs' eligibility for the waiting list or a BFD for more than two months. [*Id.* at ¶ 36]; *see also* 5 U.S.C. § 555(b). On January 24, 2025, Defendants filed the instant Motion seeking dismissal of Plaintiffs' Complaint. [#12] Plaintiffs responded to the Motion [#29] and Defendants replied [#32].

## II.    LEGAL STANDARD

Defendants move to dismiss Plaintiffs' Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In the alternative, Defendants move to sever and dismiss the claims of all but the lead Plaintiff.

### A.    Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) empowers a court to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of a plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

Rule 12(b)(1) challenges are generally presented in one of two forms: "[t]he moving party may (1) facially attack the complaint's allegations as to the existence of subject matter jurisdiction, or (2) go beyond allegations contained in the complaint by presenting

evidence to challenge the factual basis upon which subject matter jurisdiction rests." *Merrill Lynch Bus. Fin. Servs., Inc. v. Nudell*, 363 F.3d 1072, 1074 (10th Cir. 2004) (quoting *Maestas v. Lujan*, 351 F.3d 1001, 1013 (10th Cir. 2003)).  When reviewing a facial attack on subject matter jurisdiction, the Court "presume[s] all of the allegations contained in the amended complaint to be true."  *Ruiz v. McDonnell*, 299 F.3d 1173, 1180 (10th Cir. 2002).

### B.   Federal Rule of Civil Procedure 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  In deciding a motion under Rule 12(b)(6), a court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff."  *Cassanova v. Ulibarri*, 595 F.3d 1120, 1124 (10th Cir. 2010) (quoting *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)).  Nonetheless, a plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'"  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570).  "The burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she

is entitled to relief." *Id*. (quoting *Twombly*, 550 U.S. at 556). The ultimate duty of the court is to "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

### C.      Federal Rule of Civil Procedure 20(a)(1)

"Persons may join in one action as plaintiffs if: (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1). A court may sever misjoined plaintiffs if this test is not met and "no substantial right will be prejudiced by the severance." *Coughlin v. Rogers*, 130 F.3d 1348, 1350 (9th Cir. 1997). If no substantial right will be prejudiced, the court may generally "dismiss all but the first named plaintiff without prejudice to the institution of new, separate lawsuits by the dropped plaintiffs." *Id*.

## III.   ANALYSIS

Defendants make several arguments in favor of dismissal. First, Defendants argue that the Court lacks jurisdiction to compel USCIS to adjudicate interim U visa benefits. [#12 at 6-11] Second, Defendants argue that Plaintiffs fail to state a claim to relief. [*Id.* at 11-14] Finally, Defendants argue that Plaintiffs are improperly joined. [*Id.* at 14-15] Because the Court agrees that it lacks subject matter jurisdiction, the Court does not address Defendants' other arguments.

## A.      Legal Framework

Under the Administrative Procedure Act (APA), administrative agencies are required to conclude matters "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." 5 U.S.C. § 555(b).  The Act tasks a reviewing court with "compel[ling] agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).  To state a claim for unreasonable delay, a party must assert "that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted).  The APA's judicial review provisions do *not* apply when "agency action is committed to agency discretion by law." 5 U.S.C. § 701(a)(2).  Generally, the ability of a court to review an executive determination is presumed unless there is "clear and convincing evidence" that Congress intended to preclude such review.  *Kucana v. Holder*, 558 U.S. 233, 252 (2010) (quotation omitted).

One such clear jurisdiction stripping statute is 8 U.S.C. § 1252(a)(2)(B).  In relevant part, the statute states:  "[N]o court shall have jurisdiction to review-- . . . (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title." 8 U.S.C. § 1252(a)(2)(B)(ii).  "[T]his subchapter" refers to the subchapter entitled "Immigration" codified at 8 U.S.C. §§ 1151-1382.  *Kucana*, 558 U.S. at 239 n.3.  The U-visa statute is within the subchapter and it specifies U-visa petitioning procedures, statutory caps, and duties of the Attorney General with respect to

nonimmigrants who obtain U-visas, among other things.  8 U.S.C.  § 1184(p).  The BFD process was permitted by the U-visa statute.  8 U.S.C.  § 1184(p)(6).  The U-visa waiting list was created by regulation.  *See* 8 C.F.R.  § 214.14(d)(2).

The Mandamus Act provides district courts with "original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."  28 U.S.C.  § 1361.  "To be eligible for mandamus relief, the petitioner must establish (1) that he has a clear right to relief, (2) that the respondent's duty to perform the act in question is plainly defined and peremptory, and (3) that he has no other adequate remedy." *Rios v.  Zaglar*, 398 F.3d 1201, 1206 (10th Cir.  2005) (citing *Johnson v.  Rogers*, 917 F.2d 1283, 1285 (10th Cir.  1990)).  "The court's jurisdiction over a mandamus petition depends on the character of the government's duty to the petitioner."  *Id.*  (citing *Marquez-Ramos v.  Reno*, 69 F.3d 477, 479 (10th Cir.  1995)).  If a duty is ministerial, as opposed to discretionary, mandamus may be appropriate. *Carpet, Linoleum & Resilient Tile Layers v.  Brown*, 656 F.2d 564, 566 (10th Cir. 1981).

### B.    Subject Matter Jurisdiction

#### 1.    EADs and Wait List Pacing

The first issue the Court must decide is whether Section 1252(a)(2)(B)(ii) applies outside of orders of removal.  Defendants argue that Section 1252(a)(2)(B)(ii) strips the Court of subject matter jurisdiction to compel USCIS to adjudicate interim U-visa benefits. [#12 at 6-8]  Plaintiffs oppose, arguing that Section 1252 applies only to orders of removal and collateral issues.  [#29 at 2-5]

Some courts' findings support Plaintiffs' interpretation.  One court reasoned that "[a] simple textual review of the statute, read in context, strongly suggests that § 1252(a)(2)(B)(ii) refers to judicial review of orders of removal."  *Tista v.  Jaddou*, 577 F.  Supp. 3d 1219, 1224 (D.N.M.  2021).  The court did not elaborate further on this issue, simply emphasizing that Section 1252's title is "Judicial review of orders of removal" and that Section 1252(a)(2)(B)(i) strips jurisdiction over judgments under "certain statutes that provide the Executive with discretion to grant or deny various forms of relief from removal."  *Id.*  Therefore, the *Tista* court concluded that Section 1252 does not independently preclude review of unreasonable delay of U-visa processing claims.  *Id.*  at 1225.

There is, however, a split in authority on this issue.  For example, the Seventh Circuit has held that "the plain language of § 1252(a)(2)(B)(ii) bars courts *from reviewing any discretionary decisions of the Attorney General made under the authority of sections 1151 through 1378 of Title 8 of the United States Code*."  *El-Khader v.  Monica*, 366 F.3d 562, 566 (7th Cir.  2004) (emphasis in original).  The *El-Khader* court was unpersuaded that Section 1252's title had a limiting effect on the jurisdiction stripping provision's application.  *Id.*

The Tenth Circuit has also discussed this issue, finding that the "heading of a section cannot limit the plain meaning of the text," particularly when the text is "complicated and prolific."  *Van Dinh v.  Reno*, 197 F.3d 427, 432 (10th Cir.  1999) (quoting *Brotherhood of R.R.  Trainmen v.  Baltimore & O.R.  Co.*, 331 U.S.  519, 528-29 (1947)).  The Tenth Circuit concluded that Section 1252 was just such a complicated and prolific

text.  *Id.*  The Court reasoned that Section 1252 "addresses a multitude of jurisdiction issues, including ones that are collateral to the review of a final order of deportation."  *Id.*  Therefore, the Court concluded that "§ 1252(a)(2)(B)(ii) is not limited in application only to review by the circuit courts of final orders of removal."  *Id.*

This view is shared by the Sixth Circuit, which held "section 1252(a)(2)(B)(ii) is not limited to discretionary decisions made within the context of removal proceedings."  *CDI Information Services v.  Reno*, 278 F.3d 616, 620 (6th Cir.  2002).  The Third Circuit similarly noted, when citing Section 1252(a)(2)(B)(ii), "this jurisdiction-stripping provision applies 'regardless of whether the [administrative] judgment, decision, or action is made in removal proceedings.'" *Jilin Pharmaceutical USA v.  Chertoff*, 447 F.3d 196, 199 n.5 (3d Cir.  2006) (quoting REAL ID Act of 2005, Pub. L.  No.  109–13, Div.  B., § 101(f)(2), 119 Stat.  302, 305 (2005)).  District courts within the Fifth Circuit have held the same.  *D'Cruz v.  USCIS*, No.  CV H-24-340, 2024 WL 4523307, at *4 (S.D.  Tex.  Oct.  9, 2024) ("all BFD Policy actions taking in the course of the decision-making process -- including the pace at which that process is undertaken, are unreviewable [under § 1252(a)(2)(B)(ii)]" (quotation and emphasis omitted)).  Indeed, some of *Tista*'s sister courts have also held that Section 1252(a)(2)(B)(ii) applies more broadly.  *See Ramires v.  Wolf*, No.  1:20-cv-203-KWR-SMV, 2020 WL 6146393 (D.N.M.  Oct.  20, 2020).  *Ramires*, for example, held that the jurisdictional bar of Section 1252(a)(2)(B)(ii) precludes review of adjudication of work authorization for U-visa petitioners.  *Id.*  at *4.  Courts within this district have agreed, holding that "the court lacks jurisdiction over any

attempt to compel work authorization under . . . 8 U.S.C. § 1252(a)(2)(B)(ii))." *Butanda v. Wolf*, 516 F. Supp. 3d 1243, 1250 (D. Colo. 2021).

Accordingly, the Court is respectfully unpersuaded by Plaintiffs' arguments. The Tenth's Circuit's guidance on this issue is clear: Section 1252(a)(2)(B)(ii) is not limited to decisions concerning removal and other collateral matters. The plain language of the statute suggests that the Court is barred from reviewing any discretionary decisions of the Attorney General made under the authority of the subchapter entitled "Immigration" codified at 8 U.S.C. §§ 1151-1382.

The second issue the Court must decide is whether EAD decisions are discretionary. Defendants categorize EAD decisions as "any other [discretionary] decision or action of the Attorney General or the Secretary of Homeland Security." [#12 at 6-7 (quoting 8 U.S.C. § 1252(a)(2)(B)(ii))] They contend that the phrasing "*may* grant work authorization to any alien who has a pending, bona fide application for nonimmigrant status" indicates that USCIS's power is discretionary. [*Id.* (quoting 8 U.S.C. § 1184(p)(6) (emphasis added)).

It is a common-sense principle of statutory interpretation that the word "may" implies discretion. *U.S. v. Rogers*, 461 U.S. 677, 706 (1983). This is especially true when the same statute uses the term "shall" in other contexts. *Kingdomware Tech. v. U.S.*, 579 U.S. 162, 172 (2016). Here, the general U-visa provision states that USCIS "*may* grant work authorization" for individuals with BFDs. 8 U.S.C. § 1184(p)(6). This can be contrasted with another portion of the relevant statute which, in the context of nonimmigrants with lawful temporary resident status, declares that the Attorney General

"shall" provide U-visa nonimmigrants with employment authorization. 8 U.S.C. § 1184(p)(3)(B). Congress could have used the word shall in Section 1184(p)(6) if it wanted to create a mandatory duty. Because Congress employed the word "may," it is presumed that Congress intended the duty to be discretionary.

Other courts have reasoned similarly. The *Ramires* court held that, as used in Section 1184(p)(6), "[t]he word "may" is a clear grant of discretion to the USCIS." *Ramires*, 2020 WL 6146393, at *4. "[Section 1184(p)(6)] does not mandate that the USCIS give work authorization to pending, bona fide applications." *Id.* "The statute also doesn't require that USCIS adjudicate whether to give a petitioner work authorization while pending placement on the wait list." *Id.* This view is shared by various other courts. *See Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021) ("[USCIS] was not required to adjudicate [plaintiffs'] requests for work authorization–meaning that the failure to adjudicate these claims was not unlawful" (emphasis omitted)); *Moreno v. Wolf*, 558 F. Supp. 3d 1357, 1367 (N.D. Ga. 2021) ("[T]he Court concludes that section 1184(p)(6) creates only authority–but no obligation–for the USCIS to adjudicate pre-waitlist work authorization, thereby precluding jurisdiction over this claim."); *Butanda*, 516 F. Supp. 3d at 1251 ("nothing in Section 1184(p)(6) requires the agency to do anything [and therefore] federal courts lack jurisdiction to compel adjudication of applications for work authorization" (quotation omitted)); *Uranga v. U.S. Citizenship & Immigr. Servs.*, 490 F. Supp. 3d 86, 101 (D.D.C. 2020) ("while Congress gave the government the authority to issue EAD to those with pending, bona fide U-visa applications, it did not require the

agency to determine whether any particular applicant was eligible to receive them"). Accordingly, the Court finds that EAD decisions are discretionary.

The third issue the Court must decide is whether wait list pacing is discretionary. Defendants categorize wait list pacing as "any other decision or action" of the Attorney General in the Attorney General's discretion.    [#12 at 8 (quoting 8 U.S.C. § 1252(a)(2)(B)(ii))]   Defendants argue that this Court lacks jurisdiction to review claims regarding the pace of wait list determinations because there is no statutorily mandated timeline for processing U-visa applications, making the pacing discretionary.    [*Id*.] Plaintiffs, on the other hand, contend that the pace is not discretionary relief or a discretionary decision and thus it does not fall under the jurisdictional bar of Section 1252. [#29 at 2]

Courts within this district and beyond have arrived at different conclusions when addressing this issue.  Some courts side with Defendants' argument that agency delay is insulated from judicial review absent a statutory deadline to adjudicate U-visa applications.  They reason that "[n]owhere in [the statute] has Congress prescribed a timeframe for processing U-visa applications." *Butanda*, 516 F. Supp. 3d at 1248. Rather, they look at the context of the U-visa statute and find that "Congress gave the Attorney General the authority to devise the system for processing applications—and ultimately granting or denying them." *Id.*; *see also* 8 U.S.C.  § 1184(a).  Thus, they find that "[t]he lack of a Congressionally mandated timeline and the concomitant grant of discretion to determine the "time" and "conditions" of admitting U-visa applicants renders the pace of adjudication non-reviewable under Section 1252." *Id*.

This conclusion is bolstered by the fact that Congress prescribes timelines for nonimmigrant admission in other contexts; for example, Congress required the Attorney General to adjudicate certain petitions related to nonimmigrants working in the motion picture or television industries in "no more than 14 days."  8 U.S.C. § 1184(c)(6)(D).  Courts following Defendants' preferred interpretation emphasize this difference, finding that in Section 1184(p)(6), unlike other parts of the statute, "Congress did not set a deadline" and "[w]ith no specific deadline in the statute, Congress has left to . . . administrative discretion the time in which [to]  complete [the]  review of such applications." *Hasan v.  Wolf*, 550 F. Supp. 3d 1342, 1347 (N.D. Ga. 2021) (quoting *Beshir v.  Holder*, 10 F. Supp. 3d 165, 176 (D.D.C. 2014)).  Courts also reiterate that "there are no requirements, statutory or regulatory, regarding when USCIS must determine which petitioners are waitlist eligible."  *Hidalgo Canevaro v.  Wolf*, 540 F. Supp. 3d 1235, 1242 (N.D. Ga. 2021).  Though these courts concede that "federal regulations provide that '*eligible* petitioners' who are not granted U visas solely due to the statutory cap" must be placed on the waitlist, they assert that USCIS has not neglected that duty solely by "taking too long."  *Id.*

Other courts side with the Plaintiffs' argument that the pace at which a U-visa petition is adjudicated is not jurisdictionally barred.  These courts find that "USCIS is required to determine whether a petitioner is eligible for a U visa, even if the ultimate decision to issue such a visa is discretionary." *Lara Santiago v.  Mayorkas*, 554 F. Supp. 3d 1340, 1347 (N.D. Ga. 2021).  They conclude that "[b]ecause USCIS must adjudicate U visa petitions, it follows that they must do so within a reasonable amount of time." *Id.*

at 1348; *see also Moreno*, 558 F. Supp. 3d at 1364-65 (holding that USCIS has a non-discretionary duty to adjudicate U-visa applications and thus must do so in a reasonable time).  Unlike courts that follow Defendants' position, courts that follow Plaintiffs' position emphasize that "a lack of timeframe alone does not render the statute optional." *M.J.L. v. McAleenan*, 420 F. Supp. 3d 588, 596 (W.D. Tex. 2019) (quotation omitted).  They use the following logic: although the statute "does not specify the timeframe within which a decision on U Visa Petitions should be made, 'by necessary implication the adjudication must occur within a reasonable period of time, since a contrary position would permit the USCIS to delay indefinitely, a result Congress could not have intended.'" *Id.* at 597 (quoting *Saini v. U.S.  Citizenship & Immigr.  Servs.*, 553 F. Supp. 2d 1170, 1176 (E.D. Cal. 2008)).

Generally, courts siding with Plaintiffs' interpretation find that "making the threshold determination of whether an applicant is eligible for the waiting list is not" specified by law "to be in the discretion of the Attorney General or the Secretary of Homeland Security," and thus Section 1252(a)(2)(B)(ii) does not strip the court's jurisdiction.  *Uranga*, 490 F. Supp. 3d at 102 (quotation omitted).  Some courts within this circuit have held similarly. *See Tista*, 577 F. Supp. 3d at 1226; *Bustos v. Mayorkas*, No. CV 20-1348 KG/SMV, 2021 WL 3931173, at *4 (D.N.M. Sept. 2, 2021).  In determining that there must be explicit statutory authority granting discretion for the jurisdictional bar to apply, these cases rely on the holding in *Kucana.  Id.*  However, *Kucana*'s holding was limited, finding that Section 1252(a)(2)(B)(ii) does not bar judicial review of decisions specified as discretionary by regulation, rather than by statute.  *Kucana*, 558 U.S. at 252-53.  *Kucana* did not hold that

the word "discretion" must be explicitly stated for a decision to be protected from review by Section 1252(a)(2)(B)(ii); it simply held that decisions made under the authority of regulations granting discretion do not fall under the jurisdictional bar.  *Id.*

The Tenth Circuit infers discretion when it arises from the text, rather than requiring that particular words be used to indicate a grant of discretion.  *Van Dinh*, 197 F.3d at 433. Here, the law at issue is not a regulation granting any actor discretion to create a timetable for the pace of wait list determinations.  Rather, at issue is a statute which omits reference to a timeline for processing U-visa applications.  *See* 8 U.S.C. § 1184(p).   While it is true that the waiting list itself was created by regulation, the statute leaves the pace of processing U-visa applications open.  *See id.*; *see also* 8 C.F.R.  § 214.14(d)(2).  *Kucana* thus does not apply to this case.

The Court is persuaded by Defendants' argument on this matter.   Section 1184(p)(6) does not mandate a timeline in which USCIS must process U-visa applications. This lack of timeline indicates that Congress has left the matter within the Attorney General's discretion.  Congress could have prescribed a timeline for U-visa application processing if it did not want to leave the matter to the discretion of the Attorney General. Indeed, Congress did mandate timelines in other such circumstances.  Here, there are no requirements for when the USCIS must determine which petitioners are waitlist-eligible.  There is no indication, based solely on the fact that Plaintiffs have been waiting 11-29 months to have their petitions processed, that Defendants have neglected this duty. Accordingly, while the Court agrees with Plaintiffs that USCIS is required to determine

whether a petitioner is eligible for a U-visa, the Court concludes that this duty alone does not create a mandatory duty to make eligibility determinations on a particular timeline.

Plaintiffs reliance upon *Lara-Esperanza v. Mayorakas* is misplaced. *Lara-Esperanza* concluded that the pace of adjudication of an I-601 waiver did not fall under the jurisdictional bar of Section 1182(a)(9)(B)(v). No. 23-cv-01415-NYW-MEH, 2023 WL 7003418, at *5 (D. Colo. Oct. 24, 2023). The court based its decision on its statutory interpretation of the term "action" in Section 1182. *Id*. The court's conclusion did not involve any statutory interpretation of the jurisdictional bar at issue here: Section 1252. *Id.* at *5-6. Indeed, the application of *Lara-Esperanza* to U-visa applications is directly contradicted by the conclusion in *Butanda*, an on-point case also within this district, which held that Section 1252 does strip the court of jurisdiction to review the pace of U-visa application processing. *Butanda*, 516 F. Supp. 3d at 1248-49. Accordingly, the Court is not persuaded that it should adopt the reasoning of *Lara-Esperanza* in this entirely different context.

Congress chose, in enacting Section 1252(a)(1)(B)(ii), to strip the courts of jurisdiction to review discretionary decisions of the Attorney General or the Secretary of Homeland Security made under the authority of Section 1184(p). Both the decision to grant EADs and the pacing at which a petitioner is placed on the waiting list are within such discretion. The Mandamus Act does not entitle Plaintiffs to relief where the government's duty to the Plaintiff is discretionary, as Plaintiffs do not have a clear entitlement to relief in such cases. And the APA does not entitle Plaintiffs to relief where

Section 1252(a)(1)(B)(ii) has stripped courts of jurisdiction to grant relief. Therefore, the Court does not have jurisdiction to review these claims.

### 2.    Deferred Action Decisions

Defendants contend that deferred action decisions are part of the discretionary process for obtaining employment authorization, making such decisions unreviewable under Section 1252(a)(2)(B)(ii). [#12 at 9] In addition, Defendants argue that deferred action determinations are unreviewable under Section 1252(g), which provides: "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." [*Id.*] Plaintiffs offer no additional arguments against these contentions. [*See generally* #29] And, as detailed above, the Court is not persuaded by Plaintiffs' argument that Section 1252(a)(2)(B)(ii) applies only to orders of removal and collateral issues.

Congress does not statutorily require that deferred actions be made for any particular U-visa applicant. Rather, deferred actions are generally made when USCIS decides to issue employment authorization. U.S. CITIZENSHIP AND IMMIGR. SERVS., POLICY MANUAL Vol. 3 Part C Ch. 5, https://www.uscis.gov/policy-manual/volume-3-part-c-chapter-5 (last visited Sept. 1, 2025). Deferred actions last the duration of the BFD EAD. *Id.* Essentially, deferred actions are granted so that a petitioner can work in the United States under their employment authorization without a looming threat of removal. These circumstances imply a discretionary authority to grant deferred action within the statute that provides discretionary authority to grant EADs.

The Court thus finds that the statutory language "[t]he Secretary may grant work authorization to any alien who has a pending, bona fide application" should implicitly be read to include granting deferred removal as part of the discretion to grant work authorization.  8 U.S.C. § 1184(p)(6).  Thus, deferred action decisions are unreviewable under Section 1252(a)(2)(B)(ii) as "any other decision or action of the Attorney General or the Secretary of Homeland Security . . . in the discretion of the Attorney General or the Secretary of Homeland Security."  8 U.S.C. § 1252(a)(2)(B)(ii).  Whether deferred action determinations are also unreviewable under Section 1252(g) is thus immaterial.

The Mandamus Act does not entitle Plaintiffs to relief where the government's duty to the Plaintiffs is discretionary, as Plaintiffs do not have a clear entitlement to relief in such cases.  And the APA does not entitle Plaintiffs to relief where Section 1252(a)(1)(B)(ii) has stripped courts of jurisdiction to grant relief.  Deferred actions are discretionary and fall under the statutory bar of Section 1252(a)(1)(B)(ii).  Therefore, the Court does not have jurisdiction to review this claim.

### 3.    BFDs

Finally, Defendants argue that the Court lacks jurisdiction to consider BFD claims. [#12 at 9-11]  They advocate for a broad interpretation of Section 1252(a)(2)(B)(ii), arguing that the statute precludes review of all decision making derived from Section 1184(p)(6), including any final, discretionary EADs or deferred action, and their predicate non-discretionary BFDs.  They support this concept with *Patel v. Garland*, which interpreted the meaning of "judgment" in Section 1252(a)(2)(B)(i) to encompass "any and all

decisions relating to the granting or denying of discretionary relief."  596 U.S. 328, 337-38 (2022) (quotation omitted).

Plaintiffs do not offer any additional arguments against this contention.  And for the reasons previously described, this Court is not persuaded that Section 1252(a)(2)(B)(ii) applies only to removal.  Nonetheless, like many issues in this case, courts are divided as to the discretionary nature of the duties imposed by Section 1184(p)(6).  Courts that align with Defendants' interpretation reason as follows:  Section 1184(p)(6) does not contain "a specific standard of eligibility mandating adjudication."  *Ramires*, 2020 WL 6146393, at *5.  The statute does not define "bona fide" and "does not require the USCIS to evaluate whether an application is bona fide."  *Id.* (citing *Uranga*, 490 F. Supp. 3d, at 98).  These courts find that Congress could not have clearly intended for USCIS to adjudicate BFD eligibility because "Congress did not specifically state what the single 'eligibility' requirement, 'bona fide' meant."  *Patel v. Cissna*, 400 F. Supp. 3d 1373, 1380 (M.D. Ga. 2019); *see also N-N v. Mayorkas*, 540 F. Supp. 3d 240, 257-58 (E.D.N.Y. 2021) (holding that Section 1184(p)(6) was framed as discretionary because the term "bona fide" had insufficient definitional content).  And "Congress's loose 'eligibility' requirement" is "consistent with an intent to vest the Secretary with maximum discretion."  *Patel*, 400 F. Supp. 3d  at 1381.  The Court thus "has no authority to read into [the statutory]  language rights and duties that do not appear."  *Id.* at 1382.  Indeed, if Congress wished to create a non-discretionary duty to evaluate applications for BFDs, "it generally has the authority, and knows how, to do so."  *Id.* at 1383.  Because Congress "did not mandate implementation of § 1184(p)(6), much less mandate adjudication of the

benefits it contemplates," the Court cannot read in a mandatory duty on its own. *Gonzalez*, 985 F.3d at 370; *see also Salas v. Jaddou*, No. 1:24-cv-01526-DDD-CYC, 2025 WL 2158278, at *4 (D. Colo. July 22, 2025) (finding that the court lacked jurisdiction to review or compel adjudication of BFDs because Congress mandated no timeline). As a result, the decision to grant or deny a BFD is discretionary. *See Patel v. Noem*, No. 25 C 657, 2025 WL 1766104, at *3 (N.D. Ill. June 26, 2025).

Other courts conclude the opposite, finding that Section 1252(a)(2)(B)(ii) does not strip the courts of jurisdiction to review an allegedly unreasonably delayed BFD. *See Barrios Garcia v. U.S. Dep't of Homeland Sec.*, 25 F.4th 430, 436 (6th Cir. 2022). According to these courts, it is a "well-settled" and "strong presumption" that executive determinations are generally subject to judicial review. *Guerrero-Lasprilla v. Barr*, 589 U.S. 221, 229 (2020). This presumption is overcome only by "clear and convincing evidence" of intent to preclude judicial review. *Id.* Unlike the courts adopting reasoning similar to Defendants', courts adopting the opposite conclusion find that there is not clear and convincing evidence within Section 1184(p)(6) that the decision to grant or deny a BFD is discretionary. These courts reason that the language of Section 1184(p)(6) can be read as "requiring the DHS Secretary to decide if an application is 'pending' and 'bona fide' before the agency can wield its discretion to grant an applicant work authorization." *Barrios Garcia*, 25 F.4th at 444 (emphasis omitted). Courts consult the USCIS Policy Manual to bolster this conclusion, describing that the relevant BFD process involves the USCIS determining if the petition is bona fide, then determining whether the petitioner poses a risk to national security or public safety, and finally exercising discretion to

determine if a petitioner warrants employment authorization. *Id.* Under this reading, "USCIS *must* decide whether a U-visa application is bona fide *before* exercising its discretion to grant work authorization." *Id.* at 445 (emphasis added). Courts describe this construction as a "back to front" construction style. *Id.* at 444

The Court respectfully finds that the Sixth Circuit's back-to-front reading is contrary to the manner in which Congress intended the statute to be read. This is simply not a natural reading of the statute. A typical, front-to-back reading compels a finding that both the decision to grant or deny employment authorization and the decision to grant or deny a BFD are discretionary. Congress could have used language, such as "shall,' to create a mandatory duty to grant or deny BFDs. But Congress chose not to and omitted any guidance as to the definition of "bona fide." This is consistent with Congress intending maximal discretion. As a result, this Court cannot read into the statute a mandatory duty.

The Mandamus Act does not entitle Plaintiffs to relief where the government's duty to the Plaintiff is discretionary, as Plaintiffs do not have a clear entitlement to relief in such cases. And the APA does not entitle Plaintiffs to relief where Section 1252(a)(1)(B)(ii) has stripped courts of jurisdiction to grant relief. BFDs are discretionary and fall under the statutory bar of Section 1252(a)(1)(B)(ii). Therefore, the Court does not have jurisdiction to review this claim.

## IV.    Conclusion

For the foregoing reasons, the Court respectfully **GRANTS** Defendant's Motion to Dismiss [#12].[3]  Plaintiffs' claims are **DISMISSED WITHOUT PREJUDICE**.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1216 (10th Cir. 2006) ("A longstanding line of cases from this circuit holds that where the district court dismisses an action for lack of jurisdiction, as it did here, the dismissal must be without prejudice.").

DATED:   September 1, 2025               BY THE COURT:


                                        s/Scott T.  Varholak
                                        Chief United States Magistrate Judge

---

[3] The Court recognizes that Plaintiffs requested leave to file an Amended Complaint.  [#29 at 5]   A "district court may deny leave to amend where amendment would be futile." *Jefferson Cnty. Sch. Dist. No. R-1 v. Moody's Invs. Servs.*, 175 F.3d 848, 859 (10th Cir. 1999). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal."  *Id.*  Neither party addresses the futility of amending the Complaint, but the Court finds that Plaintiffs' claims could not be written in a manner that would avoid subjecting the Complaint to dismissal for lack of subject matter jurisdiction, as detailed herein.  Thus, the request to amend is **DENIED**.